# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD A. STABILE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 12-168 |
| | ) Judge Nora Barry Fischer |
| ALLEGHENY LUDLUM, LLC, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

This is an employment discrimination case brought by Plaintiff Edward A. Stabile against his former employer Defendant Allegheny Ludlum, LLC. (Docket No. 30-2). Plaintiff's claims include age discrimination under the Age Discrimination and Employment Act ("ADEA"), disability discrimination pursuant to the Rehabilitation Act and an ERISA Section 510 claim for Defendant's alleged intentional interference with Plaintiff's continuing receipt of medical benefits. (*Id.*). Presently pending before this Court is Plaintiff's Amended Motion for Leave to File a Second Amended Complaint. (Docket No. 30). Defendant opposes this Motion. (Docket No. 31). For the following reasons, Plaintiff's Motion is GRANTED.

**II.  FACTUAL BACKGROUND[1]**

Plaintiff was employed by Defendant, a manufacturer and processor of specialty steel products, as a Senior Production Supervisor from approximately November 19, 1978 until his termination from employment on August 22, 2011. (Docket No. 30-2 at ¶¶ 6-7; 15). Plaintiff is

---

[1] The Court has derived the factual background from the allegations contained in Plaintiff's proposed Second Amended Complaint. (Docket No. 30-2). In evaluating the sufficiency of the Second Amended Complaint, this Court must accept the Plaintiff's well-pleaded factual allegations as true and construe them in his favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

sixty-five years old and was the oldest employee in the "Melt Shop," which Plaintiff describes as a department consisting of approximately 200 employees within Defendant's Brackenridge, Pennsylvania plant. (*Id.* at ¶¶ 15; 18). In his most recent position as a Senior Production Supervisor, Plaintiff supervised employees, cast steel, and ensured plant safety. (*Id.* at ¶ 16).

Plaintiff suffers from heart disease and diabetes that significantly limit his ability to perform major life activities, such as walking, sleeping, engaging in manual activity and working, as compared to an average person. (*Id.* at ¶¶ 19-20; 26). Defendant is aware of Plaintiff's health problems and the limitations they impose on his performance of major life activities. (*Id.* at ¶¶ 23- 24; 28; 32-33). In particular, Plaintiff had explained his health problems to various members of Defendant's management team, including Melt Shop Superintendent Russ Conners, Melt Shop Assistant Superintendent Brent Furl, Melt Shop Assistant Superintendent Scott Bigley, Melt Shop Assistant Superintendent Kevin Smith, Melt Shop Assistant Superintendent Paul Manns and Melt Shop Office Manager Jerry Durci. (*Id.*).

In 2003, Plaintiff suffered a heart attack, sustained related physical harm and injury, and underwent significant medical procedures, including stent placement. (*Id.* at ¶¶ 19-24). He subsequently took a four-week medical leave of absence from work, during which he avers that he remained in regular contact with Defendant. (*Id.* at ¶¶ 21-22). Thereafter, on two occasions between 2005 and 2009, Plaintiff required medical treatment while at work from Emergency Medical Technicians due to his diabetes. (*Id.* at ¶ 25). Defendant created reports for both of his on-site diabetes treatments. (*Id.* at ¶ 27). Then, in July 2011, Plaintiff suffered another heart attack and again sustained physical harm and received medical treatment, including another stent placement. (*Id.* at ¶¶ 29; 32-33). He took another two-week medical leave of absence from work but stayed in contact with Defendant during his leave. (*Id.* at ¶¶ 30-31). Due to Plaintiff's

employment with Defendant, he and his children, including a son that is disabled, received health and medical benefits under Defendant's self insured employer welfare plan. (*Id.* at ¶¶ 53-56; 58). Over the course of several years, Plaintiff and his children purportedly incurred "significant medical expenses for various health conditions," which resulted in significant medical bills paid by Defendant. (*Id.* at ¶¶ 57; 59).

On August 22, 2011, six weeks after Plaintiff had returned to work following his second medical leave, Defendant terminated his employment. (*Id.* at ¶¶ 34-35). Plaintiff claims that Melt Shop Superintendent Brent Furl and Plant Superintendent John Beresek made the decision to terminate him. (*Id.* at ¶¶ 36-37). Following his termination, Defendant allegedly replaced Plaintiff with significantly younger and non-disabled production supervisors including, but not limited to E. Talmadge and J. Davenport. (*Id.* at ¶ 47). Defendant communicated to Plaintiff that one of the reasons for his termination was an email that Plaintiff sent prior to his second medical leave, in March 2011. (*Id.* at ¶ 38). In this email, Plaintiff purportedly referred to a piece of workplace equipment in an "inappropriate" manner. (*Id.*). Plaintiff describes that his reference was, in reality, "familiar workplace jargon" and "was not objectionable or inappropriate." (*Id.* at ¶¶ 39-40). Another alleged reason that Defendant provided for Plaintiff's termination was that Plaintiff had "incurred minor physical harm in minor accidents." (*Id.* at ¶ 43). Plaintiff asserts that these accidents resulted from workplace safety hazards, as well as Defendant's own negligence, and did not cause "lost time" for Defendant. (*Id.* at ¶ 44). Moreover, Plaintiff avers that younger, non-disabled production supervisors, including, but not limited to Foremen T. Fusko, T. Hines, L. Fykes, J. Kesicky, J. Davenport and E. Talmadge had often used the same language and had also been involved in similar minor accidents but were not subject to termination. (*Id.* at ¶¶ 41-42; 45-46).

Based on the foregoing, Plaintiff asserts that Defendant's proffered reasons for his termination are pretext for age and disability discrimination. (*Id.* at ¶¶ 48-51). To that end, Plaintiff has pled that he was treated less favorably than and replaced by significantly younger, non-disabled production supervisors when he was terminated for allegedly using inappropriate language in an e-mail and for allegedly "incurr[ing] minor physical harm in minor accidents," while younger, non-disabled production supervisors did not suffer the same consequences for using the same language and being involved in minor accidents. (*Id.* at ¶¶ 38-41; 43; 45; 47-48; 76). Alternatively, Plaintiff contends that Defendant's proffered reasons for his termination are pretext for Defendant's intentional interference with his continuing receipt of medical benefits under Defendant's self insured employer welfare plan which is subject to the provisions of ERISA. (*Id.* at ¶ 52-55; 58). Because Plaintiff and his children incurred significant medical expenses paid by Defendant, Plaintiff avers that Defendant terminated him to save money, as Defendant allegedly has a policy and practice of identifying and discriminating against eligible employees with relatively high medical costs in order to save money. (*Id.* ¶¶ 57; 59; 61).

### III. PROCEDURAL HISTORY

Plaintiff filed his Complaint on February 10, 2012, which was followed by Defendant's Motion to Dismiss the Complaint and supporting brief. (Docket Nos. 1; 4; 5). Rather than responding to Defendant's Motion, Plaintiff filed an Amended Complaint on March 29, 2012. (Docket No. 9). Approximately two weeks later, on April 13, 2012, Defendant filed a Motion to Dismiss the Amended Complaint and a supporting brief. (Docket Nos. 10; 11). Instead of filing a Response, however, Plaintiff filed a Motion for Leave to File a Second Amended Complaint. (Docket No. 14). In turn, Defendant filed a Response and Supplement in opposition, and Plaintiff filed a Reply brief. (Docket Nos. 17; 18; 19).

4

On May 31, 2012, the Court convened a Hearing on the motions.[2] (Docket No. 20). During this Hearing, the Court heard argument, and counsel for Plaintiff orally moved for the opportunity to file additional briefing, which the Court granted. (Docket No. 21). Accordingly, Plaintiff filed his Supplemental Reply on June 21, 2012, and seven days later, Defendant filed its Sur-Reply. (Docket Nos. 23; 24). Subsequently, on July 3, 2012, the Court ordered Plaintiff to show cause why the case should not be dismissed as he had named the wrong entity as Defendant and had not corrected the error despite the fact that counsel for Defendant had repeatedly pointed out to Plaintiff's counsel that the wrong Defendant had been named. (Docket No. 25). On July 27, 2012, the parties filed a Stipulation to amend the case caption by removing Defendant Allegheny Technologies, Inc. and naming Allegheny Ludlum, LLC as the Defendant. (Docket No. 27). The Court immediately granted the Stipulation and amended the case caption. (Docket No. 28).

As a result of the Stipulation and amended case caption, the Court vacated its Show Cause Order and denied Allegheny Technologies' Motion to Dismiss the Amended Complaint and Plaintiff's Motion for Leave to File a Second Amended Complaint against Allegheny Technologies as moot. (Docket No. 29). In addition, the Court ordered Plaintiff to file an Amended Motion for Leave to File a Second Amended Complaint against Defendant Allegheny Ludlum, LLC, (*id.*), which Plaintiff timely filed. (Docket No. 30). Defendant then filed its Response in Opposition to Plaintiff's Amended Motion for Leave to File a Second Amended Complaint. (Docket No. 31).

---

[2] The transcript of said Hearing has been produced and considered by the Court. (Docket No. 22). Although this Hearing predates the instant Motion, counsel's oral arguments regarding futility informs the Court's analysis. (*Id.* at 10-18; 23-31).

As this matter is fully briefed (*see* Docket Nos. 17; 18; 19; 23; 24; 30; 31) and the Court has had an opportunity to review the transcript, (Docket No. 22), it is ripe for disposition. The Court now turns to its discussion of the legal standard and its analysis.

## IV. LEGAL STANDARD

A party may file a second amended complaint "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Moreover, "[t]he court should freely give leave [to amend] when justice so requires." *Id.* The "grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997)). In the instant case, Defendant only argues futility. (Docket No. 31). Allowing an amendment would be futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane,* 213 F.3d at 115 (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane,* 213 F.3d at 115 (citing, *inter alia, In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1434). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend must be granted unless the amendment would not cure the deficiency. *DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 251 (3d Cir. 2012) (citing *Shane*, 213 F.3d at 115).

To that end, in assessing the legal sufficiency of a complaint, the Court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Bell*

6

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1947, 1950); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 WL 296904 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), and the requirements of FED. R. CIV. P. 8 must still be met. *See Burtch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1296 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ---, 131 S. Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss, respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)).

In assessing the legal sufficiency of a complaint, the Court may consider "only the allegations in the complaint, exhibits[3] attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). A document forms the basis of a claim if it is *"integral to or explicitly relied upon* in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (emphasis in original; internal citations and quotations omitted).

---

[3] Defendant attached Plaintiff's EEOC Intake Questionnaire to its Response in Opposition to Plaintiff's Motion. (Docket No. 31-1). The Court may consider this document because it constitutes a matter of public record and is *"integral to or explicitly relied upon* in the complaint." *In re Rockefeller,* 184 F.3d at 287; *Lum,* 361 F.3d at 222 n. 3. In paragraph 4 of his Second Amended Complaint, Plaintiff expressly references his EEOC Charge. (Docket No. 30-2 at ¶ 4). In addition, Plaintiff has not objected to the Court's consideration of this document.

## V. ANALYSIS

As is discussed above, the parties have engaged in considerable motions practice regarding the sufficiency of the allegations in Plaintiff's Complaint and Amended Complaint. The Court has yet to rule on the sufficiency of the allegations. In the present Motion, Plaintiff seeks leave to file a Second Amended Complaint. (Docket No. 30). He argues that the factual allegations in this proposed pleading are sufficient to state plausible claims for relief under the ADEA, the Rehabilitation Act and ERISA. (*Id.*). Defendant opposes the motion and argues that Plaintiff's allegations in his Second Amended Complaint still fail to meet the pleading requirements under *Iqbal* and *Twombly*. (Docket No. 31). As such, Defendant contends that leave to amend should be denied because the amendment is futile and further maintains that this case should be dismissed as a result of Plaintiff's repeated failure to properly plead his claims. (*Id.*). The Court will first address the parties' arguments regarding futility and then discuss the alleged repeated failure to plead this case.

*A. Futility*

With respect to futility, Defendant contends that Plaintiff's Second Amended Complaint fails to plead sufficient facts on which to state plausible claims for relief under the ADEA, Rehabilitation Act and ERISA, as it consists of non-factual conclusory assertions and threadbare recitals of the elements of the causes of action. (Docket No. 31 at 9). The Court now turns to its analysis of the sufficiency of Plaintiff's claims, starting with his ADEA claim.

1. <u>Age Discrimination and Employment Act</u>

The ADEA provides that: "it shall be unlawful for an employer […] to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must show "first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (citing *Potence v. Hazelton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

Age discrimination may be inferred from the fact "that a plaintiff's replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Ullrich v. United States Sec'y of Veterans Affairs*, 457 F. App'x 132, 138 n.3 (3d Cir. 2012) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006)). When pleading comparators, a plaintiff must demonstrate that he is similarly situated to the alleged comparator(s) in *relevant* respects. *Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012). For example, in *Golod v. Bank of Am. Corp.,* 403 F. App'x 699 (3d Cir. 2010), a Russian Jewish woman claimed that her employer passed over her for promotions in favor of other employees. *Id.* at 702. The United States Court of Appeals for the Third Circuit found her complaint to be deficient because she failed to allege the *relevant* characteristics of the alleged comparators, *i.e.* that the comparators were not female, not Jewish, or not Russian Jews. *Id.*; s*ee also Johnson v. Del. County Juvenile Det. Ctr.*, No. 11-1166, 2012 WL 895507, at *8 (E.D. Pa. Mar. 16, 2012) (finding an inference of discrimination where an African American alleged that he was terminated for using his cellular phone while white employees were not disciplined for similar cellular phone use); *Tavarez v. Twp. of Egg Harbor,* No. 09–6119, 2010 WL 2540094, at *4 (D.N.J. June 16, 2010) (determining that the plaintiff failed to state a claim under section 1981 where he alleged that he

was passed over for promotions on account of his race but failed to offer facts to support the plausibility of his claim *i.e.* the race or ethnicity of those who were promoted instead of him). Critically, the Honorable Terrence F. McVerry of this Court has determined that "the question of whether other employees are similarly situated is fact-intensive." *Sims v. Court of Common Pleas of Allegheny County*, No. 10-151, 2010 WL 3896428, at *4 (W.D. Pa. Sept. 30, 2010). Thus, Judge McVerry concluded that a plaintiff should be "entitled to engage in discovery as to whether the alleged comparators are, in fact, similarly situated. Defendants may renew their contentions, if warranted, through motions for summary judgment based upon a more fully-developed record." *Id.*

Having identified the elements to Plaintiff's claim for age discrimination, the Court will evaluate the Second Amended Complaint to determine if Plaintiff pled "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, Plaintiff has established a plausible claim for age discrimination under the ADEA. In particular, Plaintiff pleads sufficient facts to demonstrate that he is over forty years old and that he suffered an adverse employment action, as he states that he is sixty-five years old and was terminated from his employment with Defendant. (Docket No. 30-2 at ¶¶ 15; 34). Additionally, the facts pled allow the Court to "draw the reasonable inference," *Iqbal*, 556 U.S. at 678-79, that Plaintiff was qualified for his position, as he had been employed by Defendant for almost thirty-three years and held a senior, supervisory position. (Docket No. 30-2 at ¶¶ 6; 15-17).

Finally, Plaintiff properly asserts that he was replaced by comparators who are younger production supervisors, giving rise to an inference of discrimination. *See Ullrich*, 457 F. App'x at 138 n.3 (noting that age discrimination may be inferred from the fact that a plaintiff's replacement was younger). At this early stage of the litigation, it is apparent to this Court that in

11

order for the comparators to be similarly situated to Plaintiff, they should be production supervisors who engaged in the same conduct as Plaintiff but were not terminated. *See Warfield*, 460 F. App'x at 130. To the extent that there may be other relevant characteristics of the comparators, those characteristics may be developed during discovery and later challenged in a motion for summary judgment. *See Sims*, 2010 WL 3896428, at *4. Plaintiff sufficiently demonstrates that he is similarly situated to the alleged comparators in these *relevant* respects, namely that, like Plaintiff, the comparators were production supervisors who used the same language as Plaintiff and were involved in minor accidents like Plaintiff. *Warfield*, 460 F. App'x at 130. Specifically, Plaintiff has pled that he was replaced by younger production supervisors, when he was terminated for allegedly using inappropriate language in an e-mail and for allegedly "incurr[ing] minor physical harm in minor accidents." (Docket No. 30-2 at ¶¶ 38-41). However, younger production supervisors did not suffer the same consequences for using the same language and being involved in minor accidents. (*Id*. at ¶¶ 43; 45; 47-48; 76). Plaintiff's assertion that he was replaced by comparators who are younger production supervisors gives rise to an inference of discrimination.

"To survive a motion to dismiss, a plaintiff need not establish the elements of a *prima facie* case; a plaintiff merely must 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Gladden v. Vilsack*, No. 11-3001, 2012 WL 1450531, at *1 (3d Cir. Apr. 27, 2012) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009)) (citations and internal quotation marks omitted); *see also Free Speech Coal., Inc. v. Attorney Gen. of United States*, No. 10–4085, 2012 WL 1255056 (3d Cir. Apr.16, 2012) (vacating a district court's dismissal of certain claims in a complaint where the plaintiffs should have been permitted the opportunity to conduct discovery and develop the record as to

those claims). Based on the foregoing, accepting as true all of Plaintiff's factual allegations and drawing all reasonable inferences therefrom in his favor, *Iqbal*, 556 U.S. at 678-79, Plaintiff has pled "enough facts to state [an ADEA] claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's Motion is granted with respect to his ADEA claim.

2. Rehabilitation Act

The Rehabilitation Act[4] expressly makes the standards set forth in the Americans with Disabilities Act, 42 U.S.C. § 12010 *et seq.*, applicable to federal employers and to employers receiving federal funding. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282 (3d Cir. 2012). To establish a *prima facie* case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified for the job; (3) he suffered an adverse employment action; and (4) a non-disabled applicant was selected for the position, giving rise to an inference of discrimination. *Wishkin v. Potter*, 476 F.3d 180, 184-85 (3d Cir. 2007). An "individual with a disability" is defined as an individual who has "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Id.* (citing 29 U.S.C. § 705(20)(B)). Disability discrimination may be inferred from the fact that a plaintiff's replacement was non-disabled. *See Still v. Shinseki*, No. 10-1413, 2011 WL 5025186, at *2 (W.D. Pa. Oct. 21, 2011).

Here, Plaintiff has established a plausible claim for disability discrimination under the Rehabilitation Act. He pleads sufficient facts to demonstrate that he is disabled, as he suffers from heart disease and diabetes that significantly limit his ability to perform major life activities,

---

[4] The substantive standards that are applicable to the Rehabilitation Act are the same as those that apply to the Americans with Disabilities Act. *Ridley Sch. Dist. v. M.R.,* 680 F.3d 260, 282 (3d Cir. 2012) (citing *McDonald v. Pa. Dep't of Pub. Welfare*, 62 F.3d 92 (3d Cir.1995)).

such as walking, sleeping, engaging in manual activity and working, as compared to an average person.[5] (Docket No. 30-2 at ¶¶ 19-20; 26). Plaintiff also experienced an adverse employment action, as he was terminated from his employment with Defendant. (*Id.* at ¶ 34). Additionally, the facts pled allow the Court to "draw the reasonable inference," *Iqbal*, 556 U.S. at 678-79, that Plaintiff was qualified for his position, as he had been employed by Defendant for almost thirty-three years and held a senior, supervisory position. (Docket No. 30-2 at ¶¶ 6; 15-17).

Finally, Plaintiff properly asserts that he was replaced by comparators who are non-disabled production supervisors, giving rise to an inference of discrimination. *See Still*, 2011 WL 5025186, at *2 (noting that disability discrimination may be inferred from the fact that a plaintiff's replacement was non-disabled). As previously discussed, Plaintiff sufficiently demonstrates that he is similarly situated to the alleged comparators in the *relevant* respects. Plaintiff has pled that he was replaced by non-disabled production supervisors when he was terminated for allegedly using inappropriate language and for allegedly being involved in minor accidents, while non-disabled production supervisors did not suffer the same consequences for using the same language and being involved in minor accidents. (Docket No. 30-2 at ¶¶ 38-40; 42-43; 46-47; 49; 100). Plaintiff's assertion that he was replaced by comparators who are non-disabled production supervisors gives rise to an inference of discrimination.

Thus, accepting as true all of Plaintiff's factual allegations and drawing all reasonable inferences therefrom in his favor, *Iqbal*, 556 U.S. at 678-79, Plaintiff has pled a plausible claim

---

[5] The Court notes that on a motion for leave to amend, Plaintiff need not prove that his heart disease and diabetes constitute disabilities which substantially limit one or more of his major life activities. Instead, Plaintiff must assert well-pleaded factual allegations that plausibly give rise to an entitlement for relief. *Santiago*, 629 F.3d at 130; *see also Fowler,* 578 F.3d at 213 (holding that a plaintiff had sufficiently pled her ADA claim, even though it did not establish the elements of a *prima facie* case, primarily because she had "identifie[d] an impairment" and alleged a limitation to sedentary work which "plausibly suggest[ed] that she might be substantially limited in the major life activity of working"); *Haybarger v. Lawrence County Adult Prob. & Parole*, No. 06-892, 2010 WL 2787921, at *8 (W.D. Pa. July 14 ,2010), *rev'd on other grounds,* 667 F.3d 408 (3d Cir. 2012) (determining that on a motion for summary judgment, there was a genuine issue of material fact as to whether the plaintiff's diabetes and/or heart disease substantially limited a major life activity and that same was an issue for the jury).

for disability discrimination under the Rehabilitation Act and Plaintiff should be provided the opportunity to conduct discovery on this claim. *See Gladden*, 2012 WL 1450531, at *1 (stating that "to survive a motion to dismiss, a plaintiff need not establish the elements of a *prima facie* case; a plaintiff merely must 'put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element'"). Therefore, Plaintiff's Motion is granted with respect to his Rehabilitation Act claim.

    3. <u>ERISA Interference Claim</u>

Section 510 of ERISA, 29 U.S.C. § 1140, makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, […] or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id.* To establish a *prima facie* case for a Section 510 interference claim, a plaintiff must show that: "(1) the employer committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) (citations and internal quotation marks omitted).

Although a plaintiff need not prove that the sole reason for his or her termination was an employer's intent to interfere with benefits, the plaintiff does need to "'demonstrate that the defendant had the 'specific intent to violate ERISA.'" *Id.* (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987)). "This requires the plaintiff to show that 'the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits.'" *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000) (quoting *DeWitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997)). However, "[a plaintiff] is not

15

required to plead facts that constitute direct evidence of [a defendant's] specific intent to interfere with his ERISA plan. It is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan." *Smith v. West Manheim Twp.*, No. 11-778, 2011 WL 5117618, at *3 (M.D. Pa. Oct. 25, 2011) (quoting *Jenkins v. Union Labor Life Ins. Co.,* No. 10-7361, 2011 WL 3919501, at *6 (E.D. Pa. Sept. 7, 2011)). Thus, based upon the facts, a court may draw a reasonable inference that a defendant may be liable for interference with a plaintiff's ERISA rights. *Smith,* 2011 WL 5117618, at *3.

For instance, in *Foster v. Wesley Spectrum Serv.*, No. 10-322, 2010 WL 3431103 (W.D. Pa. Aug. 31, 2010), the plaintiffs pled that the defendant sponsored an employee welfare health insurance plan, and as eligible employees, the plaintiffs participated in the plan. *Id*. at *3. The plaintiffs alleged that due to their significant and expensive health conditions, the defendant terminated them to interfere with their continued participation in the plan because the defendant's policy and practice was to discharge employees who incurred significant healthcare costs and expenses which inure to it. *Id.* The Honorable Lisa Pupo Lenihan of this Court accepted the plaintiffs' allegations as true and held that they had stated a plausible Section 510 ERISA claim. *Id.*

Similarly, in *Chalfont v. U.S. Electrodes*, No. 10-2929, 2010 WL 5341846 (E.D. Pa. Dec. 28, 2010), the plaintiff alleged that the three defendants were liable under Section 510 because they:

> "discharged or otherwise discriminated against [him] for exercising rights to which he was entitled under the provision of an employee benefit plan, or for the purpose of interfering with the attainment of rights to which he may have become entitled under the plan ...." […] [and that] "Defendant did not want to incur the additional costs related to a reoccurrence of cancer or coronary

16

> artery disease and therefore did not recall Plaintiff after its lay-off."

*Id.* at *10. The United States District Court for the Eastern District of Pennsylvania concluded that the plaintiff adequately stated a Section 510 ERISA claim because his allegations gave rise to a reasonable inference that "he suffered from a medical condition that is subject to recurrence and which already required him to take one extended leave of absence; that the Defendants were all aware of his condition; and that Plaintiff was terminated, in part, to interfere with his right to obtain benefits under his health plan." *Id.; see also Narodetsky v. Cardone Indus., Inc.*, No. 09-4734, 2010 WL 678288, at *6 (E.D. Pa. Feb. 24, 2010) (finding that it was reasonable to infer that the defendants terminated the plaintiff's employment for the purpose of interfering with his plan benefits given that the plaintiff's termination followed his request for medical leave); *Pailleret v. Jersey Constr., Inc.*, No. 09-1325, 2010 WL 143681, at *4 (D.N.J. Jan. 11, 2010) (determining that there was a plausible inference that the ground for termination was an intent to avoid paying additional health benefits given the fact that the plaintiff was terminated after he had invoked his benefits and evinced an intent to invoke them again); *Richardson v. CSS Indus., Inc.,* No. 08–3900, 2009 WL 1383310, at *2 (E.D. Pa. May 13, 2009) (holding that the plaintiff had successfully stated a claim for wrongful termination under Section 510 when he alleged that his employer had terminated him for the purpose of eliminating his medical benefits and was motivated to do so because he was an open-heart surgery patient who would cost the company money).

The case at bar is very similar to *Foster*, 2010 WL 3431103, discussed *supra*, where Judge Lenihan determined that the plaintiffs had stated a plausible Section 510 ERISA claim. *Id.* at *3. The plaintiffs alleged that due to their significant and expensive health conditions, the

defendant terminated them to interfere with their continued participation in the health plan. *Id.* The plaintiffs further asserted that the defendant's policy and practice was to discharge employees who incurred significant healthcare costs and expenses which inure to it. *Id.* Here, Plaintiff likewise contends that Defendant's proffered reasons for his termination are pretext for its intentional interference with his continuing receipt of medical benefits under its self insured employer welfare plan which is subject to the provisions of ERISA. (Docket No. 30-2 at ¶¶ 52-55; 58). Because Plaintiff and his children incurred significant medical expenses paid by Defendant, Plaintiff avers that Defendant terminated him to save money, as Defendant allegedly has a policy and practice of identifying and discriminating against eligible employees with relatively high medical costs in order to save money. (*Id.* at ¶¶ 57; 59; 61).

In addition, Defendant knew that Plaintiff suffered from recurrent heart disease, heart attacks and diabetes, which had required him to take two medical leaves of absence. (*Id.* at ¶¶ 19-33). To that end, the Court finds the *Chalfont* decision, discussed *supra*, to be persuasive as it also involved a situation where the plaintiff's employer knew of the plaintiff's recurrent medical condition, thus creating a reasonable inference that the employer terminated the plaintiff to avoid the plaintiff's additional medical costs. *Chalfont*, 2010 WL 5341846, at *10. Similarly, the instant Plaintiff pleads that he suffered from a recurrent medical condition requiring him to take two medical leaves of absence and that Defendant was aware of his condition, which in turn, gives rise to the reasonable inference that Plaintiff was terminated, in part, to interfere with his right to obtain benefits under his health plan. Based on the foregoing, accepting as true all of Plaintiff's factual allegations and drawing all reasonable inferences therefrom in his favor, *Iqbal*, 556 U.S. at 678-79, Plaintiff has pled a plausible Section 510 ERISA unlawful interference claim and Plaintiff should be provided the opportunity to conduct discovery on this claim. *See*

*Gladden*, 2012 WL 1450531, at *1.  Therefore, Plaintiff's Motion is granted with respect to his Section 510 ERISA claim.

   B. *Repeated Failure to Cure Deficiencies*

Defendant argues that Plaintiff should be denied leave to amend because he has repeatedly failed to cure deficiencies in his complaints. (Docket No. 31 at 2). However, the "grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman,* 371 U.S. at 182.  Because the Court has determined, *supra*, that Plaintiff's Second Amended Complaint satisfies the plausibility pleading standard, Plaintiff has not demonstrated a repeated failure to cure deficiencies, as he has cured any such deficiencies that may have existed in his original and amended complaints by filing the Second Amended Complaint. (*See* Docket No. 30-2).

**VI.  CONCLUSION**

Based on the foregoing, Plaintiff's Amended Motion for Leave to File a Second Amended Complaint, (Docket No. 30), is GRANTED.  An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf:  All counsel of record

Date:   September 6, 2012